1  LEGAL SERVICES OF NORTHERN CALIFORNIA
   Karen Kontz, State Bar No. 300918
2  Laurance H Lee, State Bar No. 301482
   Sarah Ropelato, State Bar No. 254848
3  Sarah J. Steinheimer, State Bar No. 267552
   515 12th Street
4  Sacramento, CA 95814
   Telephone: (916) 551-2150
5  Facsimile: (916) 551-2196
   E-mail: llee@lsnc.net
6
7
   *Attorneys for Plaintiffs Betty Rios,*
8  *Lucille Mendez, Palmer Overstreet,*
   *Sacramento Homeless Organizing Committee*
9

10         **UNITED STATES DISTRICT COURT FOR THE**
11              **EASTERN DISTRICT OF CALIFORNIA**

12                    SACRAMENTO DIVISION
13

14  BETTY RIOS, LUCILLE MENDEZ,          CASE NO.: 2:19-CV-00922-KJM-DB
    PALMER OVERSTREET, SACRAMENTO
    HOMELESS ORGANIZING COMMITTEE,       **PLAINTIFFS' OPPOSITION TO**
15                                       **DEFENDANTS COUNTY OF**
                                         **SACRAMENTO, SACRAMENTO**
16           Plaintiffs,                 **COUNTY SHERIFF'S DEPARTMENT,**
                                         **and DEPUTY LE'S MOTION TO**
17      v.                               **DISMISS.**

18  COUNTY OF SACRAMENTO; COUNTY
    OF SACRAMENTO, as Successor Agency for
19  the Redevelopment Agency of the County of
    Sacramento; SACRAMENTO COUNTY
20  SHERIFF'S DEPARTMENT;
    SACRAMENTO HOUSING AND
21  REDEVELOPMENT AGENCY; LA SHELLE
    DOZIER, in her official capacity as Executive
22  Director of the SACRAMENTO HOUSING
    AND REDEVELOPMENT AGENCY;
23  DEPUTY LE, individually and in his official
    capacity as Deputy Sheriff for the COUNTY
24  OF SACRAMENTO,

25           Defendant.
26

27

28

─────────────────────────────────────────────

1

TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 9

II.    FACTS ....................................................................................................... 9

III.   APPLICABLE STANDARD ....................................................................... 11

IV.    ARGUMENT............................................................................................... 11

    A.     Sacramento Homelessness Organizing Committee Has Organizational Standing. ....... 11

    B.     Plaintiffs Will Dismiss Claims Against Deputy Le Other Than Excessive Force......... 14

    C.     Defendants Actions In Summarily Destroying Plaintiffs' Personal Property Constitute

        An Unreasonable Seizure........................................................................... 14

        i.     Defendants Illegally Seized Plaintiffs' Property.................................... 14

        ii.    Defendants Violated Plaintiffs' Expectation of Privacy. ........................ 15

        iii.   Plaintiffs' FAC pleads facts to establish municipal liability for a violation of the

            Fourth Amendment under *Monell*................................................... 18

    D.     Defendants' Actions In Seizing And Summarily Destroying Plaintiff's Property

        Without Due Process Violate The Fourteenth Amendment. ......................... 19

    E.     Defendants' Actions To Forcibly Remove Plaintiffs From The Stockton Encampment

        Violate The Eighth Amendment. ................................................................ 23

    F.     Plaintiffs Are Entitled To Declaratory Relief. ............................................ 24

    G.     Plaintiffs' State Law Claims Are Not Barred. ............................................. 26

    H.     Plaintiffs' California Constitution Claims Must Survive A Motion To Dismiss........... 26

    I.     Plaintiffs' California Civil Code Sections 2080, 2081.1 And 2080.10 Claim Should

        Survive A Motion To Dismiss. ................................................................... 27

    J.     Plaintiffs State A California Civil Code Section 52.1 (The Bane Act) Claim................ 27

1

V.    CONCLUSION..............................................................................................................28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

1

TABLE OF AUTHORITIES

2

**<u>FEDERAL CASES</u>**

3

*Abel v. United States*,

4

362 U.S. 217 (1960) ........................................................................ 16

5

*Acosta v. City of Salinas*,

6

No. 15-CV-05415 NC, 2016 WL 1446781 (N.D. Cal. Apr. 13, 2016)................................. 21

7

*Amezquita v. Hernandez-Colon*,

8

518 F.2d 8 (1st Cir. 1975) ................................................................ 16

9

*Bates v. United Parcel Serv., Inc.*,

10

511 F.3d 974 (9th Cir. 2007)............................................................ 24

11

*Bell Atl. Corp. v. Twombly*,

12

550 U.S. 544 (2007) ........................................................................ 11

13

*Brown v. U.S.*,

14

411 U.S. 223 (1973) ........................................................................ 16

15

*Carr v. Oregon Dep't of Transp.*,

16

No. 3:13-CV02218-MO, 2014 WL 3741934 (D. Or. July 29, 2014)..................................... 20

17

*City of Los Angeles v. Lyons*,

18

461 U.S. 95 (1983) .......................................................................... 24

19

*City of St. Louis v. Praprotmimk*,

20

485 U.S. 112 (1988) ........................................................................ 18

21

*Cobine v. City of Eureka*,

22

250 F. Supp. 3d 423 (N.D. Cal. 2017) .............................................. 21

23

*Council of Ins. Agents & Brokers v. Molasky –Arman*,

24

522 F.3d 925 (9th Cir. 2008)............................................................ 12

25

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*,

26

666 F.3d 1216, (9th Cir. 2012)......................................................... 12

27

28

3

*Fair Hous. of Marin v. Combs,*

  285 F.3d 899 (9th Cir. 2002) ................................................................................. 13

*Fairley v. Luman,*

  281 F.3d 913 (9th Cir. 2002) ................................................................................. 18

*Fuentes v. Shevin,*

  407 U.S. 67 (1972) .................................................................................................. 19

*Havens Realty Corp. v. Coleman,*

  455 U.S. (1982) ....................................................................................................... 12

*Hendon v. Ramsey,*

  528 F. Supp. 2d 1058 (S.D. Cal. 2007) ................................................................. 22

*Hodgers-Durgin v. de la Vina,*

  199 F.3,d 1037 (9th Cir. 1999) .............................................................................. 25

*Hudson v. Palmer,*

  468 U.S. 517 (1984) ................................................................................................ 22

*Jack Loumena v. Walter P. Hammon,*

  2015 WL 7180679 (N.D. Cal. Nov. 16, 2015) ...................................................... 11

*Jones v. City of Los Angeles,*

  444 F.3d 1118, (9th Cir. 2006) ........................................................................ 23, 25

*LaDuke v. Nelson,*

  762 F.2d 1318 (9th Cir. 1985) ............................................................................... 26

*Lavan v. City of Los Angeles,*

  693 F.3d 1022 (9th Cir. 2012) .......................................................... 15, 17, 19, 21

*Lee v. City of Los Angeles,*

  250 F.3d 668 (9th Cir. 2001) ................................................................................. 11

*Lujan v. Defenders of Wildlife,*

  504 U.S. 555 (1992) ................................................................................................ 12

*Martin v. City of Boise,*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

920 F.3d 584 (9th Cir. 2019) ................................................................................. 23, 24, 25

*Mathews v. Eldridge*,

424 U.S. 319 (1976) ............................................................................................ 20

*McMillian v. Monroe Cty., Ala.*,

520 U.S. 781 (1997) ............................................................................................ 18

*Melendres v. Arpaio*,

695 F.3d 990 (9th Cir. 2012) ............................................................................. 25

*Mills v. County of Lapeer*,

498 F.App'x 507 (6th Cir. 2012) ...................................................................... 16

*Miranda v. City of Cornelius*,

429 F.3d 858 (9th Cir. 2005) ............................................................................. 14

*Monell v. Dep't of Soc. Servs.*,

436 U.S. 658 (1978) ............................................................................................ 18

*Ortega-Melendres v. Arpaio*,

836 F. Supp. 2d 959 (D. Ariz. 2011) .............................................................. 25

*Outdoor Media Group, Inc.*,

506 F.3d 895 (9th Cir. 2007) ............................................................................. 11

*PFZ Props., Inc. v. Rodriguez*,

928 F.2d 28 (1st Cir. 1991) ............................................................................... 19

*Presley v. City of Charlottesville*,

464 F.2d 480 (4th Cir. 2006) ............................................................................. 16

*Ramachandran v. City of Los Altos*,

359 F. Supp. 3d 801 (N.D. Cal. 2019) ............................................................ 27

*Reese v. Sacramento*,

888 F.3d 1030 (9th Cir. 2018) ..................................................................... 27, 28

*Russell v. City & Cty. of Honolulu*,

No. CIV. 13-00475 LEK, 2013 WL 6222714 (D. Haw. Nov. 29, 2013) .............. 21

5

1

2  *Sanchez v. City of Fresno*,

3      914 F. Supp. 2d 1079 (E.D. Cal. 2012) .................................................................... 20

4  *Soldal v. Cook Cnty,*

5      506 U.S. 56 (1992) ............................................................................................. 14, 15

6  *Thomas v. County of Los Angeles*,

7      978 F.2d F.2d 505 (9th Cir. 1992) ........................................................................ 25

8  *Tsao v. Desert Palace, Inc.*,

9      698 F.3d 1128 (9th Cir. 2012) ............................................................................. 18

10  *United States v. Dodds,*

11      946 F.2d 726 (10th Cir. 1991) .............................................................................. 16

12  *United States v. Jacobsen*,

13      466 U.S. 109 (1984) ......................................................................................... 14, 16

14  *United States v. Rahme*,

15      813 F.2d 31 (2nd Cir. 1987) ................................................................................. 16

16  *United States v. Ruckman,*

17       806 F.2d 1471 (10th Cir. 1986) ............................................................................ 16

18  *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*

19      412.U.S.669 (1973) ............................................................................................... 12

20  *United States v. Thomas,*

21      864 F.2d 843 (D.C.Cir.1989) ............................................................................... 17

22  *United States v. Torres,*

23       949 F.2d 606 (2nd Cir. 1991) .............................................................................. 16

24  *United States v. Whitehead,*

25      415 F.3d 538 (6th Cir. 2005)................................................................................ 16

26  *United States v. Wider,*

27      951 F.2d (D.C. Cir. 1991) ................................................................................... 17

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

*Walls v. Cent. Contra Costa Transit Auth.*,

   No. C 08-0224 PJH, 2012 WL 581362 (N.D. Cal. Feb. 22, 2012) ........................................ 27

*Weiner v. San Diego Cty.*,

   210 F.3d 1025 (9th Cir. 2000)................................................................................................. 18

*Zimmerman v. City of Oakland*,

   255 F.3d 734 (9th Cir. 2001)................................................................................................. 22

*Zinermon v. Burch*,

   494 U.S. 113 (1990) .............................................................................................................. 22

**STATE CASES**

*Allen v. City of Sacramento*,

   234 Cal. App. 4th 41 (2015).................................................................................................. 27

*B.B. v. Cty. of Los Angeles*,

   25 Cal. App. 5th 115 (Ct. App. 2018)................................................................................... 27

*Cornell v. City & Cty. of San Francisco*,

   17 Cal. App. 5th 766 (2017)............................................................................................ 27, 28

*Katzberg v. Regents of Univ. of Calif.*,

   29 Cal. 4th 300 (2002)........................................................................................................... 26

*Le Mere v. Los Angeles Unified Sch. Dist.*,

   35 Cal. App. 5th 237 (2019).................................................................................................. 26

*People v. Amuso,*

   843 N.Y.S.2d 395 (2007) ...................................................................................................... 16

*State v. Dickson*,

   173 Or.App. 567 (2001) .................................................................................................... 17, 18

**STATUTES**

CAL. CIV. CODE § 655 ................................................................................................................. 19

CAL. CIV. CODE § 663 ................................................................................................................. 19

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

CAL. CIV. CODE § 671 ................................................................................................. 19

**OTHER AUTHORITIES**

SACRAMENTO CITY CODE § 9.16.140 .......................................................................... 24

SACRAMENTO COUNTY CODE § 9.80.010 ................................................................... 24

**CONSTITUTIONAL PROVISIONS**

U.S. Const., amend. IV .............................................................................................. 14

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

## I.   INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") pleads sufficient facts to allege Fourth, Fourteenth and Eighth Amendment violations as well as state law violations of Plaintiffs' civil rights. Defendants' motion is based on the premise that the Stockton Encampment is privately owned land akin to someone's home, and that Plaintiffs lost all rights and due process protections in their personal property because they were trespassing in violation of state law or alternatively, abandoned their property. In making these arguments, Defendants rely on allegations not pleaded and ignore and misconstrue pertinent facts and allegations in Plaintiffs' FAC, including that the property was a vacant lot composed of two parcels, owned by *both* the County and a County-run entity, Sacramento Housing and Redevelopment Agency ("SHRA"). In fact, Defendants' Motion fails to mention that they themselves own one of the parcels that made up the Stockton Encampment, and instead refer to the property as if SHRA is the sole owner. Even if that were true, Defendants' theory of trespass relies on findings that: 1) SHRA is the only property owner, which it is not, and 2) SHRA, a county agency, is a private property owner, which is untrue. Defendants' Motion further ignores that the property was fenced many years *after* a community of people experiencing homelessness developed there, that the property was not gated and locked until the day of the raid, and that the Defendants provided facilities including dumpsters, trash services, and portable restrooms. For this and the reasons outlined below, Defendants' Motion must fail.

## II.   FACTS

On any given night, at least 5,570 people are homeless in Sacramento County. (FAC ¶ 1.) Over seventy percent of individuals experiencing homelessness in the county are unsheltered. (*Id.*) These people must compete against each other for one of only 762 shelter beds in the County. (*Id.*) Defendant County of Sacramento declared a Shelter Crisis on October 16, 2018 to address the drastic need for shelter beds. (*Id.*)

Despite this, on April 28, 2019, Defendants served a 72 Hour Notice to Vacate that informed residents who lived on two adjacent parcels of land located on Stockton Boulevard

1    (Stockton Encampment) that they have to leave or face criminal prosecution. The notice stated

2    that a "site clean-up would occur on May 1, 2019" and that 'Every person who camps/ lodges

3    or stores property on public lands without permission of the owner is committing a

4    misdemeanor violation." (FAC ¶¶ 3, 13.) The Notice failed to provide information on how to

5    retrieve property and did not notify residents that their personal items would be summarily

6    destroyed. (FAC ¶¶ 13-15.)

7         The Stockton Encampment comprises two publicly owned parcels, 5700 and 5716

8    Stockton Boulevard, owned by the County and SHRA, respectively. (FAC ¶¶ 4, 10-12.) The lot

9    has been vacant for almost a decade. (*Id*.) At the time of the Notice, a community of around

10   100 people unable to access shelter were residing there; the lot had dumpster and trash services

11   along with portable restrooms provided by Defendants. (FAC ¶¶ 4, 88.) Around January 2019,

12   SHRA began installing a wrought-iron fence around the property. (FAC ¶ 12.) The property

13   remained accessible and was not gated or locked until the day of the raid. (*Id*.)

14        Three days after issuing the Notice, Defendants deployed a fleet of Sheriff's Deputies,

15   many outfitted with batons and riot gear, and at least 15 Sheriff vehicles, to remove Plaintiffs

16   from the Stockton Encampment. Defendants also deployed a helicopter overhead blaring orders

17   to the residents to disperse or face arrest. (FAC ¶¶ 5, 16, 17, 68.) During this raid, Defendant

18   County of Sacramento, joined and assisted by the remaining Defendants, destroyed the personal

19   property of approximately 100 residents. (FAC ¶ 5.) As a result, the residents were forced to

20   frantically take the items they could carry, leave critical items behind, and flee to the

21   surrounding sidewalk and nearby streets. (*Id*.)

22        Plaintiff Sacramento Homeless Organizing Committee (SHOC) is a nonprofit

23   organization who amplifies the voices of homeless people in Sacramento and was present

24   before, during, and after the raid to provide support and assist residents of the Encampment.

25   (FAC ¶¶ 55-65.)

26        Plaintiffs Betty Rios, Palmer Overstreet. and Lucille Mendez are people experiencing

27   homelessness in Sacramento County. (FAC ¶¶ 22-54.) Before the raid, Plaintiffs each

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

attempted to contact shelters and service providers, but the shelters were full or unable to accommodate them. (FAC ¶¶ 25, 34, 48.) On May 1, 2019, Defendants issued Ms. Rios and Mr. Overstreet notices threatening prosecution for trespass on private property and forcing them off the Stockton Encampment. (FAC ¶¶ 28, 50.) Defendants then illegally destroyed Plaintiff's personal property that was left behind. (FAC ¶¶ 28, 38, 49.) With nowhere to go, Ms. Mendez and Mr. Overstreet slept outside the gates of the Stockton Encampment until around May 9, when Sheriffs deputies forced them to leave. (FAC ¶¶ 40, 51.) Ms. Mendez lost additional belongings. (FAC ¶ 40.) She moved around the corner and on May 16, 2019, Defendants issued another Notice of Trespass and took her to jail for trespass. (FAC ¶ 41.) Defendants submitted government tort claims on July 1, 2019, which were all summarily denied. (FAC ¶¶ 30-31, 42-43, 52-53.)

## III.    APPLICABLE STANDARD

The Court may not dismiss the FAC unless it finds that the FAC fails to plead enough facts to state a claim of relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). At this stage of the proceedings, Plaintiffs' factual allegations are accepted as true, and all inferences must be construed in Plaintiffs' favor. *Outdoor Media Group, Inc.,* 506 F.3d 895, 900 (9th Cir. 2007).  In adjudicating a motion to dismiss, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruling on other grounds recognized by Jack Loumena v. Walter P. Hammon,* 2015 WL 7180679 (N.D. Cal. Nov. 16, 2015). Thus, the Court need not make factual determinations regarding whether Plaintiffs have proved each element of a cause of action. The Court only considers whether Plaintiffs have sufficiently stated their claims to justify allowing those claims to move forward.

## IV.    ARGUMENT

### A. Sacramento Homelessness Organizing Committee Has Organizational Standing.

To establish Article III standing, a plaintiff must demonstrate an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or

1   imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

2   (1992). The threshold is low. *See, e.g.*, *Council of Ins. Agents & Brokers v. Molasky –Arman*,

3   522 F.3d 925, 932 (9th Cir. 2008) (rejecting defendant's argument that any impact on the

4   plaintiff was "only minor" as irrelevant to the standing analysis). As the Supreme Court

5   explained in *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*:

6   "The basic idea that comes out in numerous cases is that an identifiable trifle is enough for

7   standing to fight out a question of principle; the trifle is the basis for standing and the principle

8   provides the motivation." 412 U.S. 669, 689 n. 14 (1973).

9          To establish direct organizational standing based on an injury to itself, an organization

10   must show "a drain on its resources from both a diversion of its resources and frustration of its

11   mission." *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216,

12   1219 (9th Cir. 2012).

13          Defendants argue, without engaging the factual allegations in the FAC, that Plaintiffs

14   have only averred a conclusory allegation that SHOC's resources were diverted and that the

15   actions SHOC engaged in do not "appear to be part of its mission" in any event. (Motion to

16   Dismiss, p.5.)  Defendants are wrong. The Motion to Dismiss offers an improperly narrow view

17   of the nature and purpose of SHOC's mission, and misconstrues the applicable legal standard

18   created by *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982). SHOC has alleged sufficient

19   facts to clear the low Article III bar by showing diversion of resources that "perceptibly

20   impaired" their ability to carry out its mission. *See Havens*, 455 U.S. at 379. To achieve SHOC's

21   broad mission to amplify the voice of homeless and low-income people, SHOC engages in

22   numerous activities including policy advocacy, education to the houseless community, and even

23   litigation. (FAC ¶ 55.) *Lehr v. County of Sacramento* demonstrates SHOC's longstanding

24   mission to prevent the warrantless removal of property and eviction of homeless encampments.

25   (FAC ¶¶ 56-57.) *Havens* and its progeny do not finely parse whether the organization's actions

26   are exactly on the nose of its mission statement. The Defendants' actions—forcefully evicting

27   residents of the Stockton Encampment, destroying their property, and failing to provide

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

1    meaningful notice—frustrates SHOC's mission because it caused SHOC to divert resources to

2    address Defendants' conduct against the homeless residents of the Encampment. That is

3    sufficient to confer standing. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 903-905 (9th Cir.

4    2002) (discussing *Havens*' progeny and holding efforts taken to counteract fair housing

5    discrimination beyond litigation sufficient). SHOC was forced to spend time at the Stockton

6    Encampment before, during and after the raid, to assist Plaintiffs with understanding their rights

7    and to provide comfort to individuals as they managed the traumatic displacement. (FAC ¶¶ 58,

8    64.) They went above and beyond their typical day to day activities to prepare for and attend a

9    meeting with County Supervisor Patrick Kennedy, and to physically help residents of the

10   Encampment move belongings they were not able to carry. (FAC ¶ 65.)

11          Defendants argue, without citation to authority or the FAC, that such allegations are

12   insufficient because they were "ordinary course of business." (Motion to Dismiss, 5.) The

13   extensive activities described above impaired SHOC's ability to assist other constituents

14   throughout Sacramento. (FAC ¶ 65.) Indeed, SHOC Board Member Niki Jones was unable to

15   provide education and advocacy for homeless campers at Sacramento City Hall because she was

16   forced to research, advise, and support the residents of the Stockton Encampment. (*Id.*) Her

17   limited time and resources were diverted from SHOC's regular course of business, and SHOC

18   was forced to expend time and resources it otherwise would have used in another capacity. (*Id.*)

19          And, as noted, it is the *second* time that SHOC has had to divert resources to address the

20   County and Sheriff's unconstitutional seizure of personal property of people experiencing

21   homelessness. (FAC ¶ 57.) Defendants' assertion that their conduct in *Lehr* was in another part

22   of Sacramento and was dismissed is of no moment. The fact that Defendants presently engage in

23   such unconstitutional conduct in another part of town hardly inures to their benefit and the case

24   was only dismissed *after* the County agreed to comply with due process protections. (*Id.*)

25   Therefore, the Defendants have "perceptibly impaired" SHOC's ability to fulfill its mission.[1]

26

27   _____

28   [1] Plaintiffs do not contend representational standing at this time.

13

1

**B. Plaintiffs Will Dismiss Claims Against Deputy Le Other Than Excessive Force.**

2

3
Plaintiffs alleged that Deputy Le was an active participant in the raid, but nonetheless agree to dismiss Deputy Le from all claims save the fourth cause of action for excessive force.

4

**C. Defendants Actions In Summarily Destroying Plaintiffs' Personal Property**

5
**Constitute An Unreasonable Seizure.**

6
Plaintiffs have pleaded facts sufficient to support a Fourth Amendment violation.

7
Defendants assert in a series of closely related arguments that Plaintiffs had no reasonable

8
expectation of privacy in their belongings at the Stockton Encampment because they were

9
trespassers and in any event, abandoned their personal property. (Defs.' Mot. to Dismiss 6.)

10
Defendants submit that Plaintiffs either lack standing to assert a Fourth Amendment claim or the

11
seizure was reasonable and lawful as a matter of law. (*Id.*) These arguments miss the mark for

12
two key reasons. First, Plaintiffs need not show a reasonable expectation of privacy to enjoy the

13
protection of the Fourth Amendment against illegal *seizures* of their personal property. Second,

14
even if Plaintiffs were required to make this showing, they have alleged facts sufficient to assert

15
a reasonable expectation of privacy and survive a motion to dismiss.

16
*i.   Defendants Illegally Seized Plaintiffs' Property.*

17
The Fourth Amendment protects the right to be secure in "persons, houses, papers, and

18
effects, against unreasonable searches and seizures." U.S. Const., amend. IV. It "protects two

19
types of expectations, one involving 'searches,' the other 'seizures.' A 'seizure' of property

20
occurs when there is some meaningful interference with an individual's possessory interests in

21
that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Additionally, the Fourth

22
Amendment protects against "unreasonable interferences in property interests regardless of

23
whether there is an invasion of privacy." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th

24
Cir. 2005). The Supreme Court has clearly held that personal property located in a public area is

25
protected by the Constitution, despite it being in a public space. *See Soldal v. Cook Cnty*, 506

26
U.S. 56, 68 (1992).

27
Defendants' Motion relies on an outdated framework to argue that Plaintiffs did not have

28

14

1   a reasonable expectation of privacy in their personal items, and fails to address subsequent cases

2   that changed that framework. (Defs.' Mot. to Dismiss 6.) In *Lavan v. City of Los Angeles*, 693

3   F.3d 1022, 1030 (9th Cir. 2012), the Ninth Circuit affirmed a preliminary injunction against the

4   City of Los Angeles that barred the City from seizing and destroying property that belonged to

5   homeless people. The Court held that unabandoned possessions are property within the meaning

6   of the Fourth and Fourteenth Amendments and that the City could not seize and destroy these

7   items. *Id.* at 1027.

8       The City's position in *Lavan* was that the seizure was reasonable because storing items

9   on a public sidewalk violated a city ordinance, and that Plaintiffs did not have a reasonable

10   expectation of privacy in their property. *Lavan*, 693 F.3d at 1027-1029. The *Lavan* court

11   addressed whether Defendants had conducted an unreasonable search and seizure without

12   needing to address the question of privacy. "[W]hile *Katz* and its progeny may have shifted the

13   emphasis in Fourth Amendment law from property to privacy, '[t]here was no suggestion that

14   this shift in emphasis had snuffed out the previously recognized protection for property under the

15   Fourth Amendment.'" *Id.* at 1028, citing *Soldal* at 63-64 & n.8.  Following this reasoning, the

16   *Lavan* court found that that a reasonable expectation of privacy "is not required to trigger Fourth

17   Amendment protections against seizures" *Id.* at 1028.

18       Defendants' Motion ignores this important line of cases. Defendants' unreasonable act of

19   seizing and destroying property—by itself—is enough to trigger Fourth Amendment protection.

20           *ii.   Defendants Violated Plaintiffs' Expectation of Privacy.*

21        Plaintiffs pled facts to demonstrate a reasonable expectation of privacy in their personal

22   belongings that they did not abandon. In *Lavan*, The Court found that the appellees had a

23   continued ownership of their personal possessions even if left unattended, especially when the

24   homeless individuals stepped away to perform necessary tasks such as showering, eating, using

25   restrooms, or attending court. *Lavan*, 693 F.3d at 1027.

26        Defendants' Motion makes several alternative arguments in an attempt to show that

27   Plaintiffs had no reasonable expectation of privacy in their personal effects. Namely, they argue

28

15

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

1  Plaintiffs had no reasonable expectation of privacy in items stored because they were trespassers

2  on SHRA's property, that any seizure was reasonable as a matter of law because it was in the

3  course of removing trespassers, or that there was no unreasonable seizure because the property

4  had been abandoned. Their arguments rely on a series of criminal trespass cases that are

5  distinguishable in both facts and application of law. For instance, Defendants assert that *Mills v.*

6  *County of Lapeer* bears "no meaningful difference" to the facts at issue here. 498 F.App'x 507,

7  509 (6th Cir. 2012). In *Mills*, a family lost commercial property in a tax foreclosure, vacated the

8  property, and Lapeer County changed the locks and removed property left behind. *Id.* Much of

9  the property was stored and later returned to the Mills, but some was lost or thrown away. *Id.*

10  The court found that the Mills did not have a protected property interest in the possessions left

11  behind on commercial property after a foreclosure. *Id.* at 514. These facts bear no resemblance to

12  those at issue here as they are not about seizure of personal property in the context of an

13  encampment raid.[2]

14      Plaintiffs' allegations are clear: the property was publicly owned by Defendants County

15  of Sacramento and SHRA, and is public land. (FAC ¶¶ 10-13.) Plaintiffs' FAC does not concede

16  that they are trespassers on private land. Rather, The FAC states that the property was not locked

17

18  [2]Defendants additionally rely on a series of cases, none of which address the seizure of personal property, that is not contraband, in the context of a raid of a homeless camp. *United States v. Dodds,* 946 F.2d 726

19  (10th Cir. 1991) (no reasonable expectation of privacy in boarded up apartment Defendant entered while fleeing police); *United States v. Whitehead,* 415 F.3d 538 (6th Cir. 2005) (no reasonable expectation of

20  privacy in dilapidated house where Defendant did not live); *Amezquita v. Hernandez-Colon,* 518 F.2d 8 (1st Cir. 1975) (squatters have no expectation of privacy in structures they built when they had no legal

21  right to occupy the land); *United States v. Ruckman,* 806 F.2d 1471 (10th Cir. 1986) (no expectation of privacy in firearms stored in a cave on federal land); *Presley v. City of Charlottesville,* 464 F.2d 480 (4th

22  Cir. 2006) (City's failure to update a trail map that went through someone's land was an unreasonable seizure); *Brown v. U.S.,* 411 U.S. 223 (1973) (no standing to contest seizure of stolen property in a store

23  where Defendants were not present); *United States v. Torres,* 949 F.2d 606 (2nd Cir. 1991) (no possessory interest in a shoulder bag that Defendant repeatedly claimed did not belong to her); *United*

24  *States v. Jacobson,* 466 U.S. 109 (1984) (no unlawful search or seizure of a white powdery substance on a private freight carrier); *Abel v. United States,* 362 U.S. 217 (1960) (search of false immigration ID

25  documents incident to arrest found reasonable); *United States v. Rahme,* 813 F.2d 31 (2nd Cir. 1987) (hotel guests don't have expectation of privacy after they have checked out); *People v. Amuso,* 843

26  N.Y.S.2d 395 (2007) (search of backpack for illegal contraband was reasonable because Defendant abandoned it when he jumped a fence to flee police). In fact, Defendants entirely fail to address

27  controlling adverse authority that *is* in this context.

28

16

1   and gated as Defendants' Motion contends, but open and accessible for more than ten years prior

2   to the day of the raid. (FAC ¶¶ 4, 88.) Further, Defendants provided facilities for the residents of

3   the property including dumpsters, trash services, and portable restrooms up until the day of the

4   raid. (*Id.*) Defendants' continued description of the property as locked and gated is a post hoc

5   attempt to change the facts. This itself creates an issue of fact.

6          Further, Defendants' contention that Plaintiffs abandoned their property is misguided.

7   The test for abandonment is whether the person intended to abandon the property. *United States*

8   *v. Thomas*, 864 F.2d 843, 846 (D.C.Cir.1989). Such an inquiry is necessarily highly factual. The

9   district court in *Lavan* found that the City of Los Angeles did not have a good-faith belief that

10   property had been abandoned based on a number of factors, including that individuals were

11   present and "implored the City not to destroy" their possessions. *Lavan*, 693 F.3d at 1025. Here,

12   Plaintiffs did not abandon their property – rather, Sheriff's deputies in riot gear forced them out

13   of their homes using threats of arrest and use of force, then locked their belongings inside. (FAC

14   ¶¶ 5, 16, 28, 38, 49.) Indeed, Ms. Rios left the property in an ambulance only to return to find

15   that Defendants' had removed a good portion of her property. (FAC ¶ 28) Ms. Mendez took what

16   she could carry and then could only watch as Defendants threw away the rest of her personal

17   possessions without regard for her desire to have them. (FAC ¶ 38)  Likewise, Mr. Overstreet

18   could only physically carry out some of his possessions during the raid and lost essential items to

19   his ability to try to support himself that he did not abandon. (FAC ¶ 49)

20          None of the cases cited by Defendant support either the assertion that Plaintiffs

21   abandoned their property or that the 72 hour notice somehow entitles Defendants to deem the

22   personal property remaining at the site abandoned as a matter of law. For example, in *United*

23   *States v. Wider*, 951 F.2d 1283 (D.C. Cir. 1991) and *State v. Dickson*, 173 Or.App. 567 (2001),

24   both suspects were found to have abandoned bags with drugs that they intentionally dropped

25   while fleeing the police. Here, Plaintiffs and other residents of the encampment were not running

26   from law enforcement and dropping incriminating contraband- they were following orders of law

27   enforcement, on pain of arrest, to leave their home and any belongings they could not carry

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

1    despite a lack of shelter beds.[3] (FAC ¶¶ 5, 16.) The case at bar is wholly unlike the cases relied

2    upon by Defendants and much more akin to *Lavan*. Accordingly, Plaintiffs have properly

3    pleaded both that they had a reasonable expectation of privacy in their personal belongings and

4    that they maintained their protected property interest when the belongings were unintentionally

5    left behind and locked inside a vacant public lot. As a result, Defendants' Motion must fail.

6                    *iii.   Plaintiffs' FAC pleads facts to establish municipal liability for a*

7                            *violation of the Fourth Amendment under Monell.*

8            In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held that local

9    governments and local government officials sued in their official capacity may be held liable for

10   constitutional violations arising from a government policy or custom. "To create liability under §

11   1983, the constitutional violation must be caused by a policy, practice, or custom of the entity, or

12   be the result of an order by a policy-making officer." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128,

13   1139 (9th Cir. 2012); *Monell*, 436 U.S. at 690–91.

14           Additionally, "[t]o hold a local government liable for an official's conduct, a plaintiff

15   must first establish that the official (1) had final policymaking authority 'concerning the action

16   alleged to have caused the particular constitutional or statutory violation at issue' and (2) was the

17   policymaker for the local governing body for the purposes of the particular act." *Weiner v. San*

18   *Diego Cty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (quoting *McMillian v. Monroe Cty., Ala.*, 520

19   U.S. 781, 785 (1997)). A "policy" is a "deliberate choice to follow a course of action…made

20   from among various alternatives by the official or officials responsible for establishing final

21   policy with respect to the subject matter in question." *Fairley v. Luman,* 281 F.3d 913, 918 (9th

22   Cir. 2002). Further, municipal liability may be based on a single decision by an official with final

23   policymaking authority. *City of St. Louis v. Praprotmimk¸* 485 U.S. 112, 123 (1988).

24           Plaintiffs allege that Defendants' actions on May 1, 2019 deprived them of their Fourth,

25

26   ─────────────
     [3] Defendants' reliance on *Dickson* is particularly misplaced given the court made clear that if
27   relinquishment, as alleged here, were "coerced by illegal police conduct, the defendant will not have
     abandoned his or her interest in the property in the constitutional sense under the Fourth Amendment."
28   *Dickson,* 173 Or.App. at 573.

                                                    18

1   Fourteenth and Eighth Amendment rights and that the policy and decision to summarily destroy

2   homeless individuals' belongings was a well-coordinated and planned event involving the

3   County, the Sheriff's Department, SHRA, county waste management, and others. (FAC ¶¶ 5, 16-

4   21.) Plaintiff's FAC alleges that at least 15 sheriff's vehicles, one helicopter, a fleet of deputies,

5   County waste management, and other County resources were deployed to remove the residents

6   of the Stockton Encampment, and that SHRA employees were also on scene to coordinate with

7   the Sheriff's deputies and issue Notices of Trespass. (FAC ¶¶ 17-18, 67-69.) The FAC states that

8   the raid was the direct result of an order by a policy-making officer and that Defendants have

9   continued to engage in the custom of summarily sweeping campsites and destroying belongings

10  in Sacramento County, posting notices to vacate campsites that illuminate Defendants' custom

11  and policy by including the same due process deficiencies. (FAC ¶¶ 66-69.) This is not one

12  isolated incident. (FAC ¶¶ 40, 41, 51, 66-69.) Plaintiffs live in constant fear that they will lose

13  everything they own without any ability to contest the taking or later retrieve their belongings.

14  (FAC ¶¶ 32, 44, 54.) Plaintiffs have pleaded facts sufficient to allege violations of their due

15  process rights, and Defendants' motion must fail.

16      **D. Defendants' Actions In Seizing And Summarily Destroying Plaintiff's Property**

17          **Without Due Process Violate The Fourteenth Amendment.**

18          Any significant taking of property by the State is within the purview of the Due Process

19  Clause. *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972). In order to establish a procedural due process

20  claim under section 1983, Plaintiffs must allege a protected property interest as defined by state

21  law, and that Defendants deprived them of that property interest without constitutionally

22  adequate process. *PFZ Props., Inc. v. Rodriguez*, 928 F.2d 28,30 (1st Cir. 1991). California law

23  recognizes the right of ownership of personal property. CAL. CIV. CODE §§ 655, 663, 671; *see*

24  *also Lavan*, 693 F.3d at 1031 (9th Cir. 2012).

25          *Lavan* squarely held that homeless individuals retain an "interest in the continued

26  ownership of their personal possessions." *Lavan*, 693 F.3d at 1031. After the decision in *Lavan*,

27  several district courts in this Circuit have echoed its reasoning, concluding that homeless

28

                                            19

individuals have a property interest in possessions, such as tents, tarps, blankets, and

medications, even when these possessions are kept in a public space. *See, e.g., Sanchez v. City of*

*Fresno*, 914 F. Supp. 2d 1079, 1103 (E.D. Cal. 2012) ("If there has ever been any doubt in this

Circuit that a homeless person's unabandoned possessions are 'property' within the meaning of

the Fourteenth Amendment, that doubt was put to rest by the Ninth Circuit's September 2012

decision in *Lavan v. City of Los Angeles* . . . .'); *Carr v. Oregon Dep't of Transp.*, No. 3:13-

CV02218-MO, 2014 WL 3741934, at *4 (D. Or. July 29, 2014) ("Within this most basic scope

of the due process guarantee is a homeless person's ownership interest in property that she has

left unattended but not abandoned.").

The next question is what process must be provided. The amount of process that is due

depends on a balance of factors outlined in *Mathews v. Eldridge*: "first, the private interest

affected by the government action; second, the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards; and finally, the government's interest, including the function involved and the fiscal

and administrative burdens that the additional or substitute procedural requirements would

entail." 424 U.S. 319, 335 (1976).

Defendants contend that because some Plaintiffs admit to receiving a pre-seizure notice,

they did not violate due process. (Defs.' Mot. to Dismiss 9.) Defendants fail to acknowledge the

actual contents of the pre-seizure notice. Specifically, that the notice to vacate campsite 1)

unlawfully threatened to remove Plaintiffs from public property for camping when there were

not enough shelter beds in Sacramento County; 2) gave people who had been living there for

years only three days to vacate without any hearing or ability to contest the taking of property,

and; 3) did not provide any information about if or where property would be stored, but instead

left a blank space where that information could have been filled in. (FAC ¶¶ 13-15.) The mere

fact that a pre-deprivation notice existed does not absolve Defendants of the requirement to

provide a constitutionally adequate process and meaningful opportunity to be heard.

In other encampment cases, courts have considered what process is due and upheld

20

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

1   procedural safeguards such as providing secure storage for a specified duration at a specified

2   location with identification tags permitting people to retrieve their belongings. *Acosta v. City of*

3   *Salinas*, No. 15-CV-05415 NC, 2016 WL 1446781, at *1, 8 (N.D. Cal. Apr. 13, 2016). Likewise,

4   courts have upheld a lack of pre-deprivation hearing where an adequate post-deprivation process

5   was available permitting residents to be heard and retrieve their belongings. *Russell v. City &*

6   *Cty. of Honolulu*, No. CIV. 13-00475 LEK, 2013 WL 6222714, at *12 (D. Haw. Nov. 29, 2013);

7   *see also Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 435 (N.D. Cal. 2017) (upholding City

8   process that provided notice and storage with opportunity to retrieve property and casting doubt

9   on lack of safeguards for determining which items summarily discarded). Here, Plaintiffs and

10   other residents had no opportunity to be heard before *or after* their property was seized and

11   summarily destroyed. (FAC ¶¶ 14-15, 18-19, 28, 38, 49, 84, 106, 109.) Defendants point to no

12   ordinance that specifies any sort of procedure for ensuring property is not wrongfully destroyed.

13   Rather, Defendants' continued service of deficient notices to vacate with no information about

14   post-deprivation opportunities to be heard or to retrieve belongings underscores that Defendants'

15   policy is *not* to provide such safeguards. (FAC ¶¶ 60-63.)

16         Defendants further argue that Plaintiffs have no protected property interest because they

17   were trespassers. (Defs.' Mot. to Dismiss 9.) Plaintiffs in *Lavan* had indisputably violated a

18   municipal ordinance making it unlawful to store possessions on a public sidewalk, but the court

19   makes clear that this does not extinguish their right to constitutionally adequate due process.

20   *Lavan*, 693 F.3d at 1032 ("Even if Appellees had violated a city ordinance, their previously-

21   recognized property interest is not thereby eliminated.") Defendants attempt to distinguish *Lavan*

22   by stating that the property is different from a public sidewalk, but they mischaracterize

23   Plaintiffs' allegations and again rely on the contention that SHRA and County-owned vacant lots

24   are private property on which Plaintiffs were trespassing. (Defs.' Mot. to Dismiss 9.) Further,

25   even if the Court finds that Plaintiffs were trespassing, they do not automatically lose

26   constitutional protections in their personal items and effects. *Lavan*, 693 F.3d at 1032.

27         Defendants also argue that Plaintiffs are not entitled to relief because the Tort Claims Act

28

21

is a constitutionally adequate remedy. (Defs.' Mot. to Dismiss 10.) This argument misapprehends the law. Defendants rely primarily on *Hudson v. Palmer,* 468 U.S. 517 (1984) which held that the negligent or *unauthorized* intentional deprivation of property did not violate Due Process if a meaningful post deprivation remedy is available. However, the U.S. Supreme Court later explained that *Hudson* does not apply when the deprivation is not unpredictable, a pre-deprivation process is not impossible or absurd, and the conduct of the defendants is not unauthorized. *Zinermon v. Burch,* 494 U.S. 113, 137-138 (1990). The Ninth Circuit has likewise explained *Hudson* only applies "when officials acted in random, unpredictable, and unauthorized ways" and "that post deprivation remedies could not save an otherwise unconstitutional act from unconstitutionality in cases in which the state officer acted pursuant to some established procedure." *Zimmerman v. City of Oakland*, 255 F.3d 734, 738 (9th Cir. 2001). "For an act to be considered random, it must be shown that 'the state administrative machinery did not, and could not, have learned of the deprivation until after it has occurred,' making pre-deprivation hearings impracticable." *Hendon v. Ramsey*, 528 F. Supp. 2d 1058, 1067 (S.D. Cal. 2007).

Here, Plaintiffs allege that the raid on the Stockton Encampment was authorized by Defendants and was certainly not the errant, random behavior of one or even a handful of officials. (FAC ¶¶ 66, 68-69.) Rather, the raid was a highly coordinated effort by Defendants who arranged for a large law enforcement presence, a helicopter, dump trucks, and a work crew to be present to throw away the property of Plaintiffs and other homeless residents. (*Id.* at ¶¶ 5, 16-18, 66, 68-69.) Further, the deprivation was not unpredictable to the County or the Sheriff's Department who planned the event in advance sufficient to deploy such a large amount of resources and in any event, provided notice, albeit defective, of their intended plan. (*Id.* at ¶¶ 5, 13-15, 16-18, 66, 68-69.) Therefore, the rule in *Hudson* is wholly inapplicable and Defendants cannot save themselves from their own unconstitutional acts by pointing to post deprivation remedies under the California Tort Claims Act. For these reasons, Defendant's motion to dismiss Plaintiffs' Fourteenth Amendment claims must fail.

//

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

1

2

**E.   Defendants' Actions To Forcibly Remove Plaintiffs From The Stockton**

**Encampment Violate The Eighth Amendment.**

3      Defendants argue that Plaintiffs have failed to state a claim because the FAC does not

4  allege enforcement of an illegal ordinance. This argument is misplaced. Defendants served a

5  "Notice to Vacate Campsite" that threatened arrest for camping on public lands, specifically

6  stating that "Every person who camps/ lodges or stores property on public lands without

7  permission of the owner is committing a misdemeanor violation." (FAC ¶ 3.) Defendants also

8  argue that Plaintiffs fail to state a claim because they have not alleged actual convictions.

9  However, in *Martin v. Boise*, the Ninth Circuit rebuked this notion:

10

11

12

13

> As the Supreme Court observed in *Ingraham*, the Cruel and Unusual Punishments Clause not only limits the types of punishment that may be imposed and prohibits the imposition of punishment grossly disproportionate to the severity of the crime, but also "imposes substantive limits on what can be made criminal and punished as such." *Id*. at 667, 97 S.Ct. 1401. "This [latter] protection governs the criminal law process as a whole, not only the imposition of punishment postconviction."

14  *Martin v. City of Boise*, 920 F.3d 584, 613 (9th Cir. 2019) (internal citations omitted).

15      The court recognized that "[c]ases construing substantive limits as to what the

16  government may criminalize are rare, however, and for good reason — the Cruel and Unusual

17  Punishments Clause's third limitation is "one to be applied sparingly." *Martin*, 920 F.3d at 615.

18  Despite this limitation, the court nevertheless held that a plaintiff need demonstrate only the

19  initiation of the criminal process against him, not a conviction, in order to state a claim.

20  Otherwise, the court concluded, "[i]f conviction were a prerequisite for such a challenge, "the

21  state could in effect punish individuals in the preconviction stages of the criminal law

22  enforcement process for being or doing things that under the [Cruel and Unusual Punishments

23  Clause] cannot be subject to the criminal process." *Id*. at 614 [citing *Jones v. City of Los Angeles*,

24  444 F.3d 1118, 1129, (9th Cir. 2006)].

25      Further, the Ninth Circuit held an alleged credible threat of prosecution was sufficient

26  and expressly stated that "a plaintiff need not, however, await an arrest or prosecution to have

27  standing to challenge the constitutionality of a criminal statute." *Martin*, 920 F.3d at 609. *Martin*

28

23

1   noted that the credibility of the threat of prosecution was a question of fact not subject to motion

2   for summary judgment, let alone, as here, on a motion to dismiss. *See id*. at 610.

3         Plaintiffs allege that people are sleeping outside as a last resort— Sacramento County

4   does not have the shelter space and declared a shelter crisis. (FAC ¶ 1.) Plaintiffs chose a

5   publicly owned lot that has been vacant for over ten years, with no forthcoming development

6   plans, to create a community where they could sleep without isolation and risk of danger. (FAC

7   ¶¶ 4, 10-12, 86-90.) Plaintiffs' FAC states that Plaintiffs were threatened with imminent criminal

8   process and punishment for sleeping, camping and storing property on public lands without any

9   alternatives in multiple ways. (FAC ¶¶ 86-90.) First, the notice to vacate campsite specifically

10  states that camping on public lands is a misdemeanor. (FAC at ¶¶ 13-15.) Second, on the day of

11  the raid, Defendants threatened to arrest individuals for trespass as Sheriff's deputies in riot gear

12  holding batons moved everyone outside of the lot and a helicopter circled above, blaring threats

13  of arrest or use of force over a loud-speaker. (FAC ¶¶ 16 -21.) Third, Plaintiffs Rios and

14  Overstreet were each issued a Notice of Trespass on the day of the raid, which is how Defendant

15  County and Sheriff's Department initiate criminal process in alleged trespass cases. *See*

16  SACRAMENTO CITY CODE § 9.16.140(B)(1);[4] SACRAMENTO COUNTY CODE § 9.80.010.) Ms.

17  Mendez was in fact arrested in the days following the raid for sleeping/resting nearby and not

18  complying with a Notice of Trespass. (FAC ¶ 41.) Plaintiffs were not offered social services or

19  shelter, but were threatened with criminal prosecution. (FAC ¶¶ 6, 20, 21, 25, 40.) This is a clear

20  violation of *Martin* and Plaintiffs have raised sufficient facts to survive a motion to dismiss.

21      **F.  Plaintiffs Are Entitled To Declaratory Relief.**

22        Plaintiffs are entitled to declarative relief because they have suffered a "concrete and

23  particularized" harm and there is a "sufficient likelihood that [they] will again be wronged in a

24  similar way." *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City*

25  *of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)). Where Plaintiffs seek to enjoin law

26  enforcement activities, "standing depends on [their] ability to avoid engaging in the illegal

27  _____

28  [4] This trespass ordinance is relevant because part of the Encampment is within the City.  (FAC ¶ 69.)

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

1  conduct in the future." *Jones*, 444 F.3d at 1126 (citing *Hodgers-Durgin v. de la Vina*, 199 F.3,d

2  1037, 1041 (9th Cir. 1999) (en banc)). Plaintiffs need only establish a "reasonable expectation"

3  that their conduct will recur and trigger the alleged harm. *Id.* at 1127.

4       Plaintiffs' FAC contains ample allegations to seek declaratory relief at this stage.

5  Plaintiffs are unhoused in Sacramento and struggle to survive, and to find a safe place to sleep

6  every night. (FAC ¶¶ 24-25, 32, 34, 37, 44, 46, 48, 54.) After being forcibly evicted from the

7  Stockton Encampment and suffering the loss of their personal belongings, Plaintiffs were

8  continually threatened with criminal sanctions and asked to move time and again. (FAC ¶¶ 40-

9  41, 51.) In fact, Defendants arrested Ms. Mendez close by in the days following the raid. (FAC ¶

10  51.) The risk of future exposure to the challenged policies and practices is a realistic

11  consequence of existence for folks living outdoors in this county. Further, SHOC has collected

12  multiple "Notice to Vacate Campsite" after the Stockton Encampment raid. (FAC ¶ 60-63.) The

13  "possibility of recurring injury ceases to be speculative when actual repeated incidents are

14  documented." *Thomas v. County of Los Angeles*, 978 F.2d F.2d 505, 507 (9th Cir. 1992).

15  Furthermore, exposure to an unlawful policies or practice "is both itself an ongoing harm and

16  evidence that there is 'sufficient likelihood' that Plaintiffs' rights will be violated again." *Ortega-*

17  *Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979 (D. Ariz. 2011), *aff'd sub nom. Melendres v.*

18  *Arpaio*, 695 F.3d 990 (9th Cir. 2012).

19       And lastly, Plaintiffs have properly pleaded that there is no other adequate remedy at law

20  to prevent this likely future harm from Defendants. Plaintiffs are not required to repeatedly face

21  arrest/citation/conviction for human activities they cannot avoid or lose their possessions

22  essential to their protection from the elements and daily life over and over. Economic relief after

23  the fact cannot adequately compensate Plaintiffs or other unhoused people struggling to survive

24  outside for such repeated illegal activity of Defendants that jeopardizes both their freedom and

25  safety. Indeed, in *Martin v. City of Boise*, the Ninth Circuit reversed and remanded for such

26  prospective relief. *Martin*, 920 F.3d at 618.

27       Sacramento County has not created or offered any reasonable alternatives to displaced

28

25

---

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

individuals and they continue to try to find shelter where they can, whether in a vacant lot or a public sidewalk. (FAC ¶¶ 1, 24-25, 32, 34, 37, 44, 46, 48, 54.) Defendants' actions in this matter are distinguishable from *Lyons*, where Plaintiffs could theoretically avoid future injury by obeying the law and avoiding conflict with police. *See LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985). The Plaintiffs here have no such luxury.

**G. Plaintiffs' State Law Claims Are Not Barred.**

The state law claims are not barred on the basis that the federal claims were brought before the submission of state tort claims. *Le Mere v. Los Angeles Unified Sch. Dist.* is inapposite. It involved a plaintiff who submitted her government tort claims *a year after* she filed a lawsuit predicated on the same state law claims which were included in both her original complaint and her first amended complaint. *Le Mere v. Los Angeles Unified Sch. Dist.*, 35 Cal. App. 5th 237, 245 (2019). The Court therefore held that: "[f]iling a government claim while simultaneously attempting to prosecute a cause of action based on that claim, as plaintiff did here, does not satisfy the purpose of the act, which is to give the public entity the opportunity to investigate and settle the claim without the cost of litigation." *Id.* at 247 [emphasis added]. Here, no state law claims were brought or prosecuted before the submission of state tort claims and Defendants point to no cases that support their position that the state law claims may be barred in this matter. In any event, Defendants were not prejudiced.

**H. Plaintiffs' California Constitution Claims Must Survive A Motion To Dismiss.**

Defendants submit that the sixth and seventh causes of action in the FAC are not cognizable damages claims. (Defs.' Mot. to Dismiss 14.) As an initial matter, Plaintiffs' claims under Article 1, sections 7, 13 are not merely for damages. Rather, Plaintiffs seek injunctive and declaratory relief to protect against continuing constitutional violations by Defendants. (FAC ¶ 100 (incorporating each and every preceding allegation).) By its terms, *Katzberg v. Regents of Univ. of Calif.* addresses whether there is a private right of action seeking *monetary* damages for a violation of a plaintiff's due process liberty interest. 29 Cal.4th 300, 307 (2002). Further, the law is not settled on whether *Katzberg*'s holding regarding due process *liberty* interests applies

similarly to due process *property* interests. *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 815 (N.D. Cal. 2019). And, at least one federal court in California has held *Katzberg* does not apply to bar damages for violation of property interests. *Walls v. Cent. Contra Costa Transit Auth.*, No. C 08-0224 PJH, 2012 WL 581362, at *3-4 (N.D. Cal. Feb. 22, 2012). Accordingly, the sixth and seventh causes of action are sufficient to state a claim.

**I.   Plaintiffs' California Civil Code Sections 2080, 2081.1 And 2080.10 Claim Should Survive A Motion To Dismiss.**

Defendants are correct that Plaintiffs must specifically allege the particular statute they claim was violated. Plaintiffs and Defendants met and conferred and Plaintiffs clarified that the alleged violations are of Civil Code sections 2080, 2081.1, and 2080.10 and can add this specificity, if necessary, with leave to amend. Defendants' Motion acknowledges these particular code sections and again relies on the argument that Plaintiffs did not have a property interest in items that were intentionally abandoned. Again, Plaintiffs' lost belongings were not abandoned and at minimum, the question of abandonment raises questions of fact that prevent dismissal.

Defendants rely again on their theory of trespass, but this again requires this Court to find that there is no factual question regarding the nature of the vacant, publicly owned lot that had provided a safe community to Plaintiffs and other homeless individuals for years that was not locked until the day of the raid. At minimum, this is a question of fact.

**J.   Plaintiffs State A California Civil Code Section 52.1 (The Bane Act) Claim.**

In pleading a cause of action for Civil Code section 52.1, a Plaintiff need not state any coercion independent from the constitutional violation. *Reese v. Sacramento*, 888 F.3d 1030, 1038-39 (9th Cir. 2018).[5] Additionally, "it is not necessary for the defendants to have been

---

[5]   *Allen v. City of Sacramento* earlier held that a wrongful arrest or detention, without more, does not state a claim under the Bane Act. 234 Cal. App. 4th 41 (2015), as modified on denial of reh'g (Mar. 6, 2015). However, at least three later cases disagreed with this holding. *Reese*, 888 F.3d at 1038-39; *B.B. v. Cty. of Los Angeles*, 25 Cal. App. 5th 115, 130 (Ct. App. 2018), as modified (July 12, 2018), reh'g denied (Aug. 9, 2018), as modified (Aug. 9, 2018) (stating "where the civil rights violation is intentional . . . the statutory requirements of the Bane Act are met, even if coercion is inherent in the underlying violation."); *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 800, (Ct. App. 2017), as modified (Nov. 17, 2017), review denied (Feb. 28, 2018) (Nothing in the text of the statute requires that the offending "threat, intimidation or coercion" be "independent" from the constitutional violation alleged.)

'thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" *Id.* at 1045. *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 804 (2017), as modified (Nov. 17, 2017), review denied (Feb. 28, 2018) (stating "But whether the appellant officers understood they were acting unlawfully was not a requirement. Reckless disregard of the "right at issue" is all that was necessary").

Here, Defendants' actions as pleaded exhibited reckless disregard to the individual Plaintiffs' rights. Defendants knew or should have known that the summary destruction of personal property was inconsistent with Plaintiffs' constitutional rights. (FAC ¶¶ 15, 57, 75.) In fact, Defendant County and Sheriff's Department have both already been sued by Plaintiff SHOC for substantially similar conduct against persons experiencing homelessness. (FAC ¶ 57.) Similarly, they knew or should have known that threatening prosecution for camping or lodging absent sufficient shelter beds violates the Eighth Amendment. (FAC ¶ 75.) Despite this, Defendants ignored any potential consequences of their actions and carried out the raid. Defendants had or should have had an awareness of the potential violation of Plaintiffs' Constitutional rights. Therefore, Plaintiff has properly pleaded a cause of action under Civil Code section 52.1.

## V.      CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss must be denied.

Dated: December 6, 2019                    Respectfully submitted,


By: /s/ Karen Kontz

Karen Kontz, Legal Services of Northern California

Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB