1   LEGAL SERVICES OF NORTHERN CALIFORNIA
    Karen Kontz, State Bar No. 300918
2   Laurance H Lee, State Bar No. 301482
    Sarah Ropelato, State Bar No. 254848
3   Sarah J. Steinheimer, State Bar No. 267552
    515 12th Street
4   Sacramento, CA 95814
    Telephone: (916) 551-2150
5   Facsimile: (916) 551-2196
    E-mail: llee@lsnc.net
6

7   *Attorneys for Plaintiffs Betty Rios,*
    *Lucille Mendez, Palmer Overstreet,*
8   *Sacramento Homeless Organizing Committee*

9

10          **UNITED STATES DISTRICT COURT FOR THE**
            **EASTERN DISTRICT OF CALIFORNIA**
11

12                  SACRAMENTO DIVISION

13  BETTY RIOS, LUCILLE MENDEZ,            )   CASE NO.: 2:19-CV-00922-KJM-DB
    PALMER OVERSTREET, SACRAMENTO          )
14  HOMELESS ORGANIZING COMMITTEE,         )   **PLAINTIFFS' OPPOSITION TO**
                                           )   **DEFENDANTS' SACRAMENTO**
15              Plaintiffs,                )   **HOUSING AND REDEVELOPMENT**
                                           )   **AGENCY AND LA SHELLE DOZIER'S**
16          v.                             )   **MOTION TO DISMISS**
                                           )
17  COUNTY OF SACRAMENTO; COUNTY           )
    OF SACRAMENTO, as Successor Agency for )
18  the Redevelopment Agency of the County of )
    Sacramento; SACRAMENTO COUNTY          )
19  SHERIFF'S DEPARTMENT;                  )
    SACRAMENTO HOUSING AND                 )
20  REDEVELOPMENT AGENCY; LA SHELLE        )
    DOZIER, in her official capacity as Executive )
21  Director of the SACRAMENTO HOUSING     )
    AND REDEVELOPMENT AGENCY;              )
22  DEPUTY LE, individually and in his official )
    capacity as Deputy Sheriff for the COUNTY )
23  OF SACRAMENTO,                         )
                                           )
24              Defendant.                 )
                                           )
25  _____ )

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 4

II.  FACTS ...................................................................................................... 4

III. THE COURT SHOULD DENY DEFENDANT'S MOTION .......................................... 6

    A.   Defendant's Motion to Dismiss for Lack of Standing Should Be Denied. ............. 6

        i.   Plaintiffs have standing for retrospective relief ......................................... 6

        ii.  Plaintiffs have standing for prospective relief .......................................... 7

    B.   Defendant's Motion To Dismiss For Failure To State A Claim Is Without
Merit And Should Be Denied ........................................................................ 8

        i.   Plaintiffs' have alleged facts to support municipal
liability under Monell as to SHRA's alleged
violations of the Fourth and Fourteenth
Amendments. ...................................................................................... 8

        ii.  Plaintiffs have sufficiently alleged section 1983
claims against SHRA. ........................................................................... 9

    C.   Plaintiff's State Facts To Support A Plausible Eighth Amendment Claim. ......... 10

IV.  CONCLUSION .......................................................................................... 12

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009) ............................................................................................. 8

5

*Bates v. United Parcel Serv., Inc.,*
   511 F.3d 974 (9th Cir. 2007) .................................................................................. 7

6

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ................................................................................................. 7

7

8

*Gaut v. Sunn,*
   810 F.2d 923 (9th Cir. 1997) ............................................................................... 11

9

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ............................................................................................... 6

10

11

*Martin v. Boise,*
   920 F.3d 584 (9th Cir. 2019) ......................................................................... 11, 12

12

*McMillian v. Monroe Cty., Ala.,*
   520 U.S. 781 (1997) ............................................................................................... 9

13

14

*Monell v. Dep't of Soc. Servs.,*
   436 U.S. 658 (1978) ............................................................................................ 8, 9

15

*OSU Student All. v. Ray,*
   699 F.3d 1053 (9th Cir. 2012) ............................................................................... 9

16

17

*Parker v. Asher,*
   701 F. Supp. 192 (D. Nev. 1988) ........................................................................ 11

18

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) ............................................................................. 10

19

20

*Tsao v. Desert Palace, Inc.,*
   698 F.3d 1128 (9th Cir. 2012) ............................................................................ 8, 9

21

*Weiner v. San Diego Cty.,*
   210 F.3d 1025 (9th Cir. 2000) ............................................................................... 9

22

23

24

25

26

27

28

## I.   INTRODUCTION

Plaintiffs' First Amended Complaint (FAC) pleads facts to sufficiently allege Fourth, Fourteenth and Eighth Amendment violations as well as state law violations of Plaintiffs' civil rights. Defendant's motion is based on the premise that the property owned by SHRA, 5716 Stockton Boulevard, is privately owned land akin to someone's private home, and that Plaintiffs were trespassing in violation of state law. Defendant SHRA erroneously takes the position that it was just like any property owner trying to enforce its rights. They fail to acknowledge their role in the community as a public housing agency who owns a multitude of public land, including other vacant lots throughout the county.

Defendant SHRA now asks the Court to make a factual finding that they did not play any role in the unconstitutional actions to remove homeless individuals from the Stockton Encampment, but that any alleged violations were a result of actions by SHRA's co-defendants. This is improper at the motion to dismiss stage. SHRA's motion ignores pertinent facts and allegations in Plaintiffs' FAC, including that each individual Plaintiff had lived on the property for more than one year, that the property was a vacant lot that SHRA demolished more than ten years ago, and that SHRA never implemented any plans to redevelop. SHRA further ignores that the property was fenced many years after a community of people experiencing homelessness developed there, that the property was not gated and locked until the day of the raid, and that the Defendants provided facilities including dumpsters, trash services, and portable restrooms. For this and the reasons outlined below, Defendant's Motion must fail.

## II.   FACTS

On any given night, at least 5,570 people are homeless in Sacramento County. (FAC ¶ 1.) Over seventy percent of individuals experiencing homelessness in the county are unsheltered. (*Id.*) These people must compete against each other for one of only 762 shelter beds in the county. (*Id.*) Defendant County of Sacramento declared a Shelter Crisis on October 16, 2018 in an effort to obtain additional funding to address the drastic need for shelter beds. (*Id.*)

Despite this, on April 28, 2019, Defendants served a 72 Hour Notice to Vacate that informed residents who lived on two adjacent parcels of land located on Stockton Boulevard

(Stockton Encampment) that they have to leave or face criminal prosecution. Specifically, the notice stated that a "site clean-up would occur on May 1, 2019" and that "Every person who camps/ lodges or stores property on public lands without permission of the owner is committing a misdemeanor violation." (FAC ¶¶ 3, 13.) The Notice failed to provide information on how to retrieve property and did not notify residents that their personal items would be summarily destroyed. (FAC ¶¶ 13-15.)

The Stockton Encampment comprises two publicly owned parcels, 5700 and 5716 Stockton Boulevard, owned by the County and SHRA, respectively. (FAC ¶¶ 4, 10-12.) The lot has been vacant for almost a decade. (*Id.*) At the time of the Notice, a community of around 100 people unable to access shelter were residing there; the lot had dumpster and trash services along with portable restrooms provided by the Defendants. (FAC ¶¶ 4, 88.) Around January 2019, SHRA began installing a wrought-iron fence around the property. (FAC ¶ 12.) The property remained accessible and was not gated or locked until the day of the raid. (*Id.*)

Three days after issuing the Notice, Defendants deployed a fleet of Sheriff's Deputies, some of whom were outfitted with batons and riot gear, and at least 15 Sheriff vehicles, to remove Plaintiffs from the Stockton Encampment. (FAC ¶ 5.) Defendants also deployed a helicopter overhead blaring orders to the residents to disperse or face arrest. (*Id.* at ¶¶ 5, 16, 17, 68.) During this raid, Defendant County of Sacramento, joined and assisted by SHRA, destroyed the personal property of approximately 100 residents. (*Id.* at ¶ 5.) As a result, the residents were forced to frantically take the items they could carry, leave critical items behind, and flee to the surrounding sidewalk and nearby streets. (*Id.*)

Plaintiff Sacramento Homeless Organizing Committee (SHOC) is a nonprofit community organization who amplifies the voices of homeless people in Sacramento and were present before, during, and after the raid to provide support and assist residents of the Encampment. (FAC ¶¶ 55-65.)

Plaintiffs Betty Rios, Palmer Overstreet and Lucille Mendez are individuals experiencing homelessness in Sacramento County. (FAC ¶¶ 22-54.) Prior to the raid, Plaintiffs each attempted to contact shelters and service providers, but the shelters were full or unable to accommodate

them. (*Id.* at ¶¶ 25, 34, 48.) On May 1, 2019, Defendants issued Ms. Rios and Mr. Overstreet notices threatening prosecution for trespass on private property and forcing them off the Stockton Encampment. (*Id.* at ¶¶ 28, 50.) Defendants then illegally destroyed Plaintiffs' personal property that was left behind. (*Id.* at ¶¶ 28, 38, 49.) With nowhere to go, Ms. Mendez and Mr. Overstreet slept outside the gates of the Stockton Encampment until around May 9, when Sheriff's deputies forced them to leave. (*Id.* at ¶¶ 40, 51.) Ms. Mendez lost additional belongings. (*Id.*) She moved around the corner and on May 16, 2019, Defendants issued another Notice of Trespass and took her to jail for trespass. (*Id.* at ¶ 41.) Defendants submitted government tort claims on July 1, 2019, which were all summarily denied. (*Id.* at ¶¶ 30-31, 42-43, 52-53.)

## III.   THE COURT SHOULD DENY DEFENDANT'S MOTION

### A.   Defendant's Motion to Dismiss for Lack of Standing Should Be Denied.

To establish Article III standing, a plaintiff has to meet three requirements: (1) "injury in fact" which is an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not 'conjectural' or 'hypothetical'; (2) a causal connection between the injury and the conduct complained of; and (3) a 'likelihood' that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

#### i.   *Plaintiffs have standing for retrospective relief.*

Plaintiffs meet the standing requirements for retrospective relief because they suffered an injury in fact: SHRA threatened them with arrest if they did not vacate 5716 Stockton Boulevard, and that these threats led to them dispersing from the Encampment quickly, without being able to carry many of their personal belongings with them. (FAC ¶¶ 16-21.) Plaintiffs' FAC also alleges that SHRA coordinated and directed the raid that resulted in violations of Plaintiffs' constitutional rights. (*Id.* at ¶ 69.) SHRA staff members were on site for the duration of the raid and summary destruction of Plaintiffs' property and did nothing to stop or change the tactics used by the County and Sheriffs, but instead actively participated in removing people from the Encampment. (*Id.* at ¶ 69.) Defendant SHRA attempts to absolve itself of liability from any alleged wrongdoing that occurred on May 1, 2019 and shift the blame to its codefendants – the

County and Sacramento Sheriff's Department. In this vein, SHRA argues that its codefendants, not SHRA, issued the 72 hour Notice to Vacate Campsite. However, SHRA's Motion itself concedes that it requested the assistance of the County and Sheriffs to evict the residents of the Stockton Encampment. (Def. SHRA's Mot. to Dismiss, 7.) SHRA cannot initiate an action to evict almost 100 people with nowhere else to go, and then skirt liability for the constitutional violations that ensue.

Additionally, Defendant's Motion misstates Plaintiff's allegations, referencing only that they have alleged an informed belief that Defendants acted in unison to carry out the unconstitutional actions. (FAC ¶ 72, Def. SHRA's Mot. to Dismiss, 11.)  Defendants state that this is a legal conclusion, but they ignore the factual allegations in support. Namely, that SHRA is responsible for one parcel within the Stockton Encampment, that SHRA staff were on site issuing Notices of Trespass the day of the raid, and that the raid could not have taken place without approval from an individual at SHRA with final decision-making authority. (FAC ¶ 69.) SHRA's motion does not deny these factual allegations, but rather asks the Court to make the leap—without any fact gathering—that SHRA was merely an innocent bystander before, during and after the raid.

### ii. Plaintiffs have standing for prospective relief.

Plaintiffs meet the standing requirements for prospective relief. They have suffered a "concrete and particularized" harm and there is a "sufficient likelihood that [they] will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983).)

Nothing has changed since the Stockton Encampment raid: Plaintiffs remain homeless and at risk every night they try to find a safe place to sleep outside. SHRA is intimately involved in homelessness planning in the City and County of Sacramento and is responsible for vacant lots and land throughout the County, both as the County's public housing authority and successor agency.[1] Defendant's Motion requires an assumption that SHRA is a completely independent

---

[1] *See generally* shra.org; https://www.shra.org/wp-content/uploads/2019/06/SHRA-Organization-Functions-Chart_June-2019.pdf

1  organization from the County, which is false and misleading. SHRA is a joint powers agency

2  under the direction of the City of Sacramento, the Housing Authorities of the City and County of

3  Sacramento, and the County of Sacramento. (FAC ¶ 69.)  Its governing board is composed of the

4  County Board of Supervisors members. Sacramento County does not have the shelter space and

5  has declared a shelter emergency; people are sleeping outside as a last resort, and there is a

6  sufficient likelihood that Plaintiffs will be subject to this type of unconstitutional enforcement

7  action again. (*Id.* at ¶ 1, 32, 44, 54.)

8      **B.      Defendant's Motion To Dismiss For Failure To State A Claim Is Without**

9          **Merit And Should Be Denied.**

10      "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

11  accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129

12  S.Ct. 1937, 1949 (2009). Facial plausibility is found when a plaintiff pleads factual content that

13  allows the court to draw the reasonable inference that defendant is liable for the misconduct

14  alleged. *Id* at 1949. The Court should assume that factual allegations are true, and then determine

15  whether they state a plausible claim for relief. *Id.* at 1949-1950.

16          i.   *Plaintiffs' have alleged facts to support municipal liability under Monell*

17              *as to SHRA's alleged violations of the Fourth and Fourteenth*
              *Amendments.*

18      In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held that local

19  governments and local government officials sued in their official capacity are "persons" for

20  purposes of section 1983 and may be held liable for constitutional violations arising from a

21  government policy or custom. "To create liability under § 1983, the constitutional violation must

22  be caused by a policy, practice, or custom of the entity, or be the result of an order by a policy-

23  making officer." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (internal

24  quotations and citations omitted); *Monell*, 436 U.S. at 690–91 (local governments "can be sued

25  directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action

26  that is alleged to be unconstitutional implements or executes a policy statement, ordinance,

27  regulation, or decision officially adopted and promulgated by that body's officers . . . Moreover,

28  . . . local governments . . . may be sued for constitutional deprivations visited pursuant to

governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels.").

Thus, to state a claim against Defendants under *Monell* and *Tsao*, Plaintiffs must show that (1) Defendants acted under color of state law, and (2) that the alleged constitutional violation was caused by a policy or custom. *Tsao*, 698 F.3d at 1139. Additionally, "[t]o hold a local government liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority 'concerning the action alleged to have caused the particular constitutional or statutory violation at issue,' and (2) was the policymaker for the local governing body for the purposes of the particular act." *Weiner v. San Diego Cty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (quoting *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 (1997).) "When a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights, then the official specifically intends for such violations to occur." *OSU Student All. v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012).

Contrary to the Defendant SHRA's assertion, Plaintiffs have provided ample factual allegations to support municipal liability for all codefendants including SHRA and to survive a motion to dismiss. Plaintiff's FAC alleges that SHRA directed the raid and that SHRA staff members were on-site issuing Notices of Trespass, and that SHRA worked in conjunction with the County and Sheriffs to threaten to arrest Plaintiffs and similarly situated homeless individuals. (FAC ¶ 69, 72.) Defendant's own Motion concedes that SHRA "requested the assistance of local authorities." (Def. SHRA's Mot. to Dismiss, p 7.) It is quite a stretch to then argue that there was no causal link between SHRA's initiation of the raid, and the implementation of the day itself—which they were present for. Plaintiffs' FAC demonstrates that SHRA—a public agency—was involved in the planning and final decision-making of the well-coordinated raid involving multiple county agencies and the Sheriffs. (FAC ¶¶ 16-21, 68, 72.) Thus, Plaintiffs have pleaded facts to support municipal liability for SHRA.

       *ii.    Plaintiffs have sufficiently alleged section 1983 claims against SHRA.*

Again, Plaintiffs' factual allegations against SHRA are sufficient to state section 1983 claims alleging an unreasonable seizure and a denial of due process. Defendant's statement that a

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

lack of allegations that SHRA "ratified such actions or was otherwise aware they would occur" is a red herring. (Def. SHRA's Mot. to Dismiss, 14-15.) Defendant SHRA relies on *Starr v. Baca*, 652 F.3d 1202, 1212-16 (9th Cir. 2011) to argue that Plaintiffs have not pleaded facts to support supervisory liability by deliberate indifference, but fails to account for Plaintiffs' allegations that SHRA initiated and caused the raid, *and* participated in the removal of Plaintiffs. (FAC ¶ 69.) After fact gathering, it is possible that Plaintiffs will find that SHRA did not know that a fleet of Sheriffs would be wearing riot gear and holding batons, that a helicopter would be circling blaring threats of arrest or use of force, that Sacramento Public Works would be there to trash everyone's belongings, or that the pre-seizure notice they requested the County issue would not provide due process. However, to ask the Court to dismiss Plaintiffs' claims against SHRA, when Plaintiffs' FAC pleads sufficient facts to support liability, would require the Court make an extreme leap and fill in additional facts before the parties have the opportunity to gather facts to prove the truth of their allegations. Thus, this argument is improper at the Motion to Dismiss stage and must be denied.

### C. Plaintiff's State Facts To Support A Plausible Eighth Amendment Claim.

Plaintiffs' FAC states enough facts to support an Eighth Amendment claim against SHRA. SHRA's Motion attempts to absolve itself from the alleged constitutional violations by incorrectly equating itself to a private property owner. This is not the case. SHRA is a public, joint-powers agency created by the City and County of Sacramento. (FAC ¶ 69.) SHRA was designated with responsibility for one parcel within the Stockton Encampment (5716 Stockton Boulevard) by the City of Sacramento as the Successor Agency to the Redevelopment Agency of the City. (*Id.*) The Stockton Encampment, which encompassed two publicly owned parcels, was a large, vacant lot where individuals experiencing homelessness had found safety, community, and some privacy, set back off of Stockton Boulevard for several years. (*Id.* at ¶¶ 10-12.) SHRA makes much of the fact that the Encampment was fenced on the day of the raid but ignores that a fence was built years after Plaintiffs and other people already resided in the Encampment. (*Id.* at ¶ 12.) SHRA also ignores the allegations in the FAC that Defendants themselves had provided facilities and services for the residents there, including Plaintiffs. (*Id.* at ¶¶ 4, 88.)

*Martin v. City of Boise* held that a jurisdiction cannot "criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise that they had a choice in the matter." *Martin v. Boise*, 920 F.3d 584 (9th Cir. 2019). Defendant SHRA is correct that this holding is narrow. However, to apply *Martin* in this scenario, the Court need not extend its holding "beyond recognition," as Defendant's Motion contends, but must consider the facts in light of the circumstances in the County. Plaintiffs are people experiencing homelessness with no alternatives other than to camp, sleep, and store their belongings outside. (FAC ¶¶ 4, 10-12, 86-90.) Plaintiffs chose a large, public lot that was removed from the street in order to find safety and community. (*Id.*) Plaintiffs are not looking for a declaration that they can sleep or lie in the County anywhere, at any time, without restriction. Plaintiffs' Eighth Amendment allegation rests on whether the Court finds the publicly owned, vacant and open lot is more like the public streets in *Lavan* and *Martin*, and different from something like a public park where time, place and manner restrictions may be reasonable. This issue is the crux of this case, and one the Court must take great care to consider after a complete review of the evidence and facts. To this end, Plaintiffs have raised enough facts to survive a motion to dismiss.

Further, in *Martin*, the Ninth Circuit held an alleged credible threat of prosecution was sufficient and expressly stated that "a plaintiff need not, however, await an arrest or prosecution to have standing to challenge the constitutionality of a criminal statute." *Martin*, 920 F.3d at 609. Importantly, *Martin* likewise noted that the credibility of the threat of prosecution was a question of fact not subject to motion for summary judgment, let alone, as here, on a motion to dismiss. *See Id.* at 610. Defendant cites to *Gaut v. Sunn*, 810 F.2d 923 (9th Cir. 1997) for the proposition that a mere threat of arrest is not sufficient to state a claim. (Def. SHRA's Mot. to Dismiss, p. 16.) In *Gaut*, the court held that a mere naked threat by a prison guard to beat him if he used legal redress to report other beatings was not sufficient to state a claim under the Eighth Amendment. *Gaut*, 810 F.2d at 925. However, at least one later case distinguished *Gaut* where the threat was imminent and the other party was presently able to effectuate the threat. *See Parker v. Asher,* 701 F. Supp. 192, 195 (D. Nev. 1988). Here, the threat of arrest was imminent as there was a myriad of law enforcement at the raid actively threatening arrest and presently

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

able to effectuate the threat. (FAC ¶¶ 5, 13, 16-17, 29, 50-51.)  Further, whereas *Gaut* is in the context of a prison with all the special disciplinary considerations that accompany that setting, *Martin* is directly comparable to the present matter wherein citizens experiencing homelessness were threatened with arrest for sleeping/resting on vacant public land with no other alternative and no shelter beds available.

Finally, the *Martin* court considered criminalization in the context of a city ordinance prohibiting disorderly conduct, which imposed criminal sanctions and was not unlike trespass in this context. *Martin*, 920 F.3d at 604. The court found that the City of Boise's use of the ordinance to arrest and threaten to arrest individuals experiencing homelessness was unconstitutional as applied, because it was used in a way to criminalize involuntary and innocent behavior that was a consequence of one's status as a homeless person. *Id.* Defendants here rely heavily on the assertion that Plaintiffs were in violation of a state law prohibiting trespass, but whether they were trespassing is neither a foregone conclusion nor dispositive of whether Defendants violated their constitutional right to be free from cruel and unusual punishment. Therefore, Plaintiffs have raised sufficient facts to state a claim for cruel and unusual punishment.

Finally, after review of Defendant SHRA's Motion, Plaintiffs agree that Defendant La Shelle Dozier, sued only in her official capacity, is a redundant defendant and will dismiss her from the lawsuit.

## IV.    CONCLUSION

Because Plaintiffs have raised sufficient facts to support constitutional violations as to SHRA, they respectfully request that the Court deny Defendant's Motion to Dismiss. Further, in the event the Court finds it necessary or proper, Plaintiffs request leave to amend. Plaintiffs remain homeless in Sacramento County amidst a shelter emergency and live outdoors as a necessity. Every night, as they look for a safe place to sleep, they fear continued criminalization and deprivation of their personal, life-sustaining property that helps them survive outdoors. They have raised facts to sufficiently state a claim against all Defendants, including SHRA. As such,

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
CASE NO.: 2:19-CV-00922-KJM-DB

dismissal of their claims at this stage would be improper, and Defendant's Motion to Dismiss must be denied.

DATED: December 6, 2019    Respectfully Submitted,

             LEGAL SERVICES OF NORTHERN CALIFORNIA


             By: /s/ Karen Kontz
               Laurance Lee
               Sarah Ropelato
               Sarah Steinheimer
               Attorneys for Plaintiffs BETTY RIOS, LUCILLE MENDEZ, PALMER OVERSTREET, and SACRAMENTO HOMELESS ORGANIZING COMMITTEE